**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT MAHONEY, Officer; SJON C.
STEVENS, Officer; CLIFF BORJESON,
Officer; CHRISTOPHER MYERS,
Officer; BRIDGET HILLAN, Officer;
LANCE BASNEY, Officer;
SALVATORE DITUSA, Officer;
CLARKE D. CHASE, Officer; JOSEPH
STANKOVICH, Officer; WELDON C.
BOYLAND, Officer; JOHN L. FARRAR,
Officer; DALE W. UMPLEBY, Officer;
RICHARD A. MCAULIFFE, Officer;
GEORGE BASELEY, Officer; DAVID
M. HARRINGTON, Officer; HENRY
FELDMAN, Officer; TERRY WHALEN,
Officer; GILLES MONTARON,
Officer; ROBERT STEVENSON,
Officer #5859; JOSHUA GOODWIN,
Officer; RYAN KANNARD, Officer;
NATHAN LEMBERG, Officer; JEFF
MITCHELL, Officer; ROBERT B.
BROWN, Officer; ERNEST T. HALL,
Officer; ROBERT BURK, Officer;
ROBERT BEATTY, Officer; TOMAS
TRYKAR, Officer; BRIEN
ESCALANTE, Officer; KAREN G. PIO,
Officer; MICHAEL GONZALEZ,
Officer; STEVE KIM, Officer; ENNIS
ROBERSON, Officer; LEROY
OUTLAW, Officer; KIERAN BARTON,

No. 14-35970

D.C. No.
2:14-cv-00794-
MJP

OPINION

Officer; JONATHAN REESE, Officer; EUGENE SCHUBECK, Officer #6696; SEAN HAMLIN, Officer; SHANNON WALDORF, Officer; JEFFREY SWENSON, Officer; TABITHA SEXTON, Officer #7430; MICHAEL SPAULDING, Officer #7491; STEVEN STONE, Officer #7540; LILIYA A. NESTERUK, Officer; TODD M. NELSON, Officer; TIMOTHY JONES, Officer; TIMOTHY J. WEAR, Officer; THERESA EMERICK, Officer #5002; ARIEL VELA, Sergeant; MICHAEL A. LARNED, Officer #6955; DEREK B. NORTON, Officer; JASON DEWEY, Officer; DAVID WHITE, Officer; TRENT SCHROEDER, Officer; AUDI A. ACUESTA; STEVE CLARK, Officer; STEVEN L. BERG, Officer; ERIK JOHNSON, Officer; VERNON KELLEY, Officer; SHELLY SAN MIGUEL, Officer; CHRISTOPHER J. ANDERSON, Officer; SUZANNE M. PARTON, Officer; ERIC F. WHITEHEAD, Officer; ALAN RICHARDS, Officer; RON WILLIS, Officer; A. SHEHEEN, Officer; RANDALL HIGA, Officer; TIM OWENS, Officer; TYLER GETTS, Officer #7537; ADAM ELIAS, Officer; JON EMERICK, Officer #4326; LOUIS CHAN, Officer; PAUL PENDERGRASS, Sergeant; AJ MARKS, Officer; RON MARTIN, Sergeant;

RUSTY L. LESLIE, Officer; TJ SAN MIGUEL, Officer; JEFFREY C. PAGE, Officer; RYAN ELLIS, Officer; JACK BAILEY, Officer; ALFRED RI WARNER, Officer #6162; MICHAEL R. WASHINGTON, Officer; NINA M. JONES, Officer #7567; ANTHONY JONES REYNOLDS, Officer; RICHARD HEINTZ, Officer; CURTIS GERRY, Officer; ADOLPH TORRESCANO, Officer; CURT E. WILSON, Officer; JAMES G. THOMSEN, Officer; RICHARD W. PRUITT, Officer #5346; DONALD L. WATERS, Detective #6287; ANTHONY J. REYNOLDS, Officer; JONARD A. LEGASPI, Officer #6231,

*Plaintiffs-Appellants*,

v.

JEFFERSON B. SESSIONS III, Attorney General,

*Defendant*,

and

CITY OF SEATTLE, including the Seattle Police Department, the Seattle Police Monitor Team, and the Seattle Attorney's Office; ED MURRAY, individually and in his official capacity, Mayor, City of

Seattle; PETER HOLMES, individually
and in his official capacity, Seattle's
City Attorney; MERRICK BOBB,
individually and in his offical
capacity, Seattle Police Monitor,
                *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted May 8, 2017
Seattle, Washington

Filed September 19, 2017

Before: Carlos T. Bea and N. Randy Smith, Circuit Judges,
and William Q. Hayes,[*] District Judge.

Opinion by Judge Hayes

---

[*] The Honorable William Q. Hayes, United States District Judge for
the Southern District of California, sitting by designation.

## SUMMARY[**]

### Second Amendment

The panel affirmed the district court's judgment upholding the use of force policy adopted by the City of Seattle; and rejected the claims under 42 U.S.C. § 1983 of plaintiffs, a group of approximately 125 Seattle Police Department ("SPD") officers who allege that Seattle violated the Second Amendment right of police officers to use firearms for the core lawful purpose of self-defense.

The panel applied a two-step inquiry to determine whether the challenged law or regulation violated the Second Amendment. At step one, the panel assumed without deciding that the use of force policy was subject to Second Amendment protection. At step two, the panel held that the use of force policy recognized that the plaintiffs could use their department-issued firearms in self-defense in an encounter with a suspect, and concluded that the use of force policy did not impose a substantial burden on plaintiffs' right to use a firearm for the purpose of lawful self-defense. The panel also concluded that the use of force policy was not such a severe restriction that it amounted to a destruction of the Second Amendment right. The panel, therefore, applied the intermediate level of constitutional scrutiny to determine whether the policy violated the Second Amendment.

Applying intermediate scrutiny, the panel concluded that the use of force policy was constitutional under the Second

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Amendment because there was a reasonable fit between the policy of Seattle's important government interest in ensuring the safety of both the public and its police officers.

The panel also affirmed the district court's dismissal of plaintiffs' substantive due process and equal protection claims.

## COUNSEL

Athan E. Tramountanas (argued), Short Cressman & Burgess PLLC, Seattle, Washington; Lisa Ann Battalia, Law Office of Lisa Ann Battalia, Bethesda, Maryland; for Plaintiffs-Appellants.

Gregory Colin Narver (argued), Assistant City Attorney; Peter S. Holmes, City Attorney; City Attorney's Office, Seattle, Washington; for Defendants-Appellees.

## OPINION

HAYES, District Judge:

We must decide whether the use of force policy adopted by the City of Seattle violates the Second Amendment right of police officers to use firearms for the core lawful purpose of self-defense. We conclude that the policy survives intermediate scrutiny and is, therefore, constitutional. We affirm the judgment of the district court.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2012, the United States brought a civil action in the United States District Court for the Western District of Washington against the City of Seattle, alleging that the Seattle Police Department ("SPD") engaged in a pattern or practice of excessive use of force. *United States v. City of Seattle*, Case No. 2:12-cv-01282-JLR (W.D. Wash.). Pursuant to a settlement agreement between the parties, the United States and the City of Seattle worked with a court-appointed monitor to produce a Use of Force Policy ("UF Policy") that would apply to SPD officers' use of approved department firearms while on duty.

On December 17, 2013, United States District Judge James L. Robart issued an order approving the policy agreed to by the parties.[1]   The UF Policy[2] states, in part, that "[o]fficers shall only use objectively reasonable force, proportional to the threat or urgency of the situation, when necessary, to achieve a law-enforcement objective." The UF Policy provides a set of factors that officers must consider to determine whether a proposed use of force is objectively reasonable, necessary, and proportional to the threat at issue.

---

[1] The order is styled as an "Order Approving Consensus Use of Force Policies" submitted by the court-appointed monitor.

[2] We take judicial notice of and reference the revised UF Policy in Appellees' request for judicial notice (Dkt. No. 30-2 at 28–85), as well as the docket sheet from *United States v. City of Seattle*, Case No. 12-cv-01282-JLR (W.D. Wash.). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). We deny the City of Seattle's second request for judicial notice of a subsequent revised UF Policy on the grounds that the document remains pending court approval.

Although the UF Policy requires officers to consider those factors before using a firearm, the UF Policy also states that officers must consider those factors only "[w]hen safe under the totality of circumstances and time and circumstances permit[.]" The UF Policy also requires officers to use de-escalation tactics to reduce the need for force only "[w]hen safe and feasible under the totality of circumstances[.]"

Appellants, a group of approximately 125 SPD officers, subsequently brought this action pursuant to 42 U.S.C. § 1983 against the City of Seattle, including SPD and other related entities, to challenge the constitutionality of the UF Policy. Appellants brought claims under the Second, Fourth, Fifth, and Fourteenth Amendments, alleging that the UF Policy unreasonably restricts their right to use department-issued firearms for self-defense. On October 17, 2014, the district court granted the motion to dismiss filed by the City of Seattle, concluding that the UF Policy did not burden conduct protected by the Second Amendment. *Mahoney v. Holder*, 62 F. Supp. 3d 1215, 1222 (W.D. Wash. 2014). Appellants timely appealed.

## STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). We review *de novo* all constitutional rulings. *See Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016). We may affirm on any basis supported by the record below. *See Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015).

When evaluating a motion to dismiss under Rule 12(b)(6), we accept the well-pleaded factual allegations of a complaint as true and construe all inferences in favor of the nonmoving party. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). Dismissal under Rule 12(b)(6) is warranted if a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

## DISCUSSION

## I.  Second Amendment Precedent and Two-Step Inquiry

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court concluded that District of Columbia statutes that required residents to keep firearms in the home unloaded and disassembled and prohibited the possession of handguns in the home violated the Second Amendment. 554 U.S. 570, 574–75, 635 (2008). The Court recognized that "the inherent right of self-defense has been central to the Second Amendment right." *Id.* at 628. The Court concluded that the statutes at issue "ma[de] it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and [were] hence unconstitutional." *Id.* at 630. The Court subsequently applied the right to keep and bear arms for self-defense under the Second Amendment against the States through the Fourteenth Amendment in *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

Following *Heller* and *McDonald*, we "adopt[ed a] two-step . . . inquiry" to determine whether a challenged law or regulation violates the Second Amendment. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). The two-step inquiry "reflects the Supreme Court's holding in *Heller* that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited." *Id.* A majority of our sister circuits have adopted this two-step inquiry to analyze Second Amendment claims. *See Silvester v. Harris*, 843 F.3d 816, 820–21 (9th Cir. 2016).

At the first step, courts ask whether "the challenged law burdens conduct protected by the Second Amendment[.]" *Chovan*, 735 F.3d at 1136. If a court answers this question in the affirmative, "the regulation is subject to Second Amendment protection (i.e., the regulation is neither outside the historical scope of the Second Amendment, nor presumptively lawful), [and] the court then proceeds to the second step of the inquiry to determine the appropriate level of scrutiny to apply." *Silvester*, 843 F.3d at 821 (citing *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014)).

## II. Step One: Whether the UF Policy Burdens Conduct Protected by the Second Amendment

To determine whether the UF Policy burdens conduct protected by the Second Amendment, we ask whether the UF Policy "is one of the 'presumptively lawful regulatory measures' identified in *Heller*, or whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical

scope of the Second Amendment[.]"[3] *Jackson*, 746 F.3d at 960 (quoting *Heller*, 554 U.S. at 627 n.26).

"*Heller* indicated that the Second Amendment does not preclude certain 'longstanding prohibitions' and 'presumptively lawful regulatory measures,' such as 'prohibitions on carrying concealed weapons,' 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings,' 'laws imposing conditions and qualifications on the commercial sale of arms,' and prohibitions on 'the carrying of "dangerous and unusual weapons,"' referring to weapons that were not 'in common use at the time' of the enactment of the Second Amendment." *Id.* at 959 (quoting *Heller*, 554 U.S. at 626–27, 627 n.26). In this case, the UF Policy—an employer policy that regulates a police officer's use of a department-issued firearm while on duty—does not resemble any of the "presumptively lawful" regulations recognized in *Heller*. 554 U.S. at 627 n.26.

Next, we examine the record to determine "whether there is persuasive historical evidence showing that the regulation does not impinge on the Second Amendment right as it was historically understood." *Silvester*, 843 F.3d at 821. In this case, the parties have not provided any "persuasive historical evidence" demonstrating that regulating police officers' use

---

[3] Appellants assert that the UF Policy infringes on their Second Amendment right to self-defense and then frame the historical inquiry around this right. The scope of Appellants' inquiry is too broad. Instead, we must examine whether restrictions on a government employee's use of a government-issued firearm in the line of duty fall outside the historical scope of the Second Amendment.

of department-issued firearms is historically longstanding or falls outside the historical scope of the Second Amendment. *Jackson*, 746 F.3d at 960, 963. We do not purport to rule definitively on whether, historically, officers have been restricted in the use of their government-issued firearms while acting within the scope of their employment. However, "[b]ecause of the lack of historical evidence in the record before us," *see Chovan*, 735 F.3d at 1137 (internal quotation mark and citation omitted), "we assume, without deciding, that the [UF Policy] burdens conduct falling within the scope of the Second Amendment." *Bauer v. Becerra*, 858 F.3d 1216, 1221 (9th Cir. 2017).

Because the UF Policy resembles none of the presumptively lawful measures identified in *Heller*, and the parties have adduced no evidence that the UF Policy imposes a restriction on conduct that falls outside the historical scope of the Second Amendment right to use a firearm for self-defense, we assume the UF Policy "is subject to Second Amendment protection" and we proceed to the second step of the inquiry.[4] *Silvester*, 843 F.3d at 821.

## III.    Step Two: Applying Constitutional Scrutiny to the UF Policy

### A. Determining the Level of Scrutiny

To ascertain the proper level of constitutional scrutiny to apply to the UF Policy at the second step, we must consider:

---

[4] The district court concluded that the UF Policy did not burden conduct protected by the Second Amendment, and therefore did not proceed to the second step of the inquiry. *See Mahoney*, 62 F. Supp. 3d at 1221–22.

"(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Silvester*, 843 F.3d at 821 (citing *Jackson*, 746 F.3d at 960–61). A restriction "that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny[,]" while a restriction that "'does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right'" warrants intermediate scrutiny. *Id.* (quoting *Jackson*, 746 F.3d at 961).

In addressing the extent to which the UF Policy burdens Appellants' constitutional right under the Second Amendment, we begin with *Heller*'s holding that the Second Amendment protects the right of citizens to use a firearm "for the core lawful purpose of self-defense[.]" *Heller*, 554 U.S. at 630. When evaluating the constitutional claim of a government employee, however, the Supreme Court instructs us to balance the rights of the employee "against the realities of the employment context." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 600 (2008).

In *Engquist*, the Supreme Court affirmed the dismissal of an equal protection challenge to the decision of the Oregon Department of Agriculture to terminate an employee "in a seemingly arbitrary or irrational manner." *Id.* at 605. The Court stated, "We have long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" *Id.* at 598 (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)). "[I]n striking the appropriate balance, we consider whether the asserted employee right

implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer." *Id.* at 600. The Court concluded that the "government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Id.* at 598–99 (quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion)); *see also Nordyke v. King*, 681 F.3d 1041, 1044–45 (9th Cir. 2012) (en banc) (concluding that an ordinance regulating "the sale of firearms . . . only minimally, and only on County property" was constitutional under the Second Amendment, while citing with approval the *Engquist* lawmaker/proprietor distinction); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126–27 (10th Cir. 2015) (concluding that a regulation prohibiting the possession of firearms on Postal Service property was constitutional under the Second Amendment, recognizing that "[t]he government often has more flexibility to regulate when it is acting as a proprietor (such as when it manages a post office) than when it is acting as a sovereign (such as when it regulates private activity unconnected to a government service)").

In this case, the UF Policy regulates Appellants' use of department-issued firearms while acting in the course and scope of their official duties as police officers. The firearms regulated by the UF Policy are issued to Appellants by the City of Seattle in its capacity as proprietor. The UF Policy was adopted by the City of Seattle as an employer to regulate the conduct of its police officers. Because the City of Seattle has a significant interest in regulating the use of department-issued firearms by its employees, we conclude that the application of intermediate scrutiny to the UF Policy

appropriately places the burden on the City of Seattle to justify placing restrictions on any Second Amendment right of its employees, while also giving the City the flexibility to act as an employer.

The second factor in determining what level of constitutional scrutiny to apply to the UF Policy requires us to consider the severity of the UF Policy's burden on the right of citizens to use a firearm for the core lawful purpose of self-defense. *See Chovan*, 735 F.3d at 1138. "This court has explained that laws which regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." *Silvester*, 843 F.3d at 827 (quoting *Chovan*, 735 F.3d at 1138). However, to determine the severity of the burden on the Second Amendment right, we look closely at the restriction on the manner of firearm possession to ensure it is not "such a severe restriction on the core right of self-defense that it 'amounts to a destruction of the [Second Amendment] right[.]'" *Jackson*, 746 F.3d at 961 (quoting *Heller*, 554 U.S. at 629); *see also Peruta v. Cty. of San Diego*, 824 F.3d 919, 950 (9th Cir. 2016) (en banc) (Callahan, J., dissenting) (courts should consider Second Amendment challenges to firearm restrictions in "context" to ensure the restrictions are not "tantamount to complete bans on the Second Amendment right to bear arms outside the home for self-defense"), *cert. denied*, — U.S. —, 137 S. Ct. 1995 (June 26, 2017).

In this case, the UF Policy applies to Appellants' use of department-issued firearms in the course and scope of their official duties. The UF Policy states that a police officer "may draw or exhibit a firearm in the line of duty when the officer has reasonable cause to believe it may be necessary

for his or her own safety or for the safety of others[.]"  The UF Policy states that prior to using physical force during an incident with a subject, Appellants "shall consider whether a subject's lack of compliance is a deliberate attempt to resist or an inability to comply based on" a variety of factors, including the subject's possible medical conditions, mental impairment, developmental disability, drug interaction, and behavioral crisis.  The UF Policy requires that "when safe under the totality of the circumstances and time and circumstances permit, officers shall use de-escalation tactics in order to reduce the need for force[.]"

The UF Policy explicitly recognizes that Appellants may use their department-issued firearms in self-defense in an encounter with a suspect—including the use of deadly force with a firearm.  The UF Policy states that "[d]eadly force may only be used in circumstances where threat of death or serious physical injury to the officer or others is imminent[,]" and recognizes that "sometimes the use-of-force is unavoidable[.]"  As a result, the UF Policy does not impose a substantial burden on Appellants' right to use a firearm for the purpose of lawful self-defense. *See Jackson*, 746 F.3d at 968 (concluding that a statute prohibiting the sale of hollow-point bullets did not "place a substantial burden on the Second Amendment right" because the statute "limits only the manner in which a person may exercise Second Amendment rights by making it more difficult to purchase certain types of ammunition.").  Thus, the nature of the burden imposed by the UF Policy on Appellants' Second Amendment right to use a firearm for the lawful purpose of self-defense favors the application of intermediate scrutiny.

Accordingly, we conclude that the UF Policy does not impose a substantial burden on the Second Amendment right

to use a firearm for the core lawful purpose of self-defense. We also conclude that the UF Policy is not "such a severe restriction on the core right of self-defense that it 'amounts to a destruction of the [Second Amendment] right[.]'" *Jackson*, 746 F.3d at 961 (quoting *Heller*, 554 U.S. at 629). Therefore, we apply intermediate scrutiny to determine whether the UF Policy violates the Second Amendment. *See Silvester*, 843 F.3d at 823 ("There is accordingly near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate.").

## B.  Application of Intermediate Scrutiny

"In the context of Second Amendment challenges, intermediate scrutiny requires: '(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective.'" *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) (quoting *Chovan*, 735 F.3d at 1139).

At the first step, in order to determine whether the government's interest is significant, substantial, or important, we first define the government's objective. *Jackson*, 746 F.3d at 965.  In *Jackson*, we explained that "[i]n considering a city's justifications for its ordinance, we do not impose 'an unnecessarily rigid burden of proof . . . so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.'" *Id.* (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50–52 (1986)).

In this case, the joint findings of fact and conclusions of law approved by the district judge in the *United States v. City*

*of Seattle* litigation states that the City of Seattle's goal in joining the settlement agreement was to "ensure[] that SPD's policies [and] procedures . . . are sufficient to prevent . . . a pattern or practice of constitutional violations." The section of the UF Policy titled "Core Principles" states that Appellants must "use only the force necessary to perform their duties[,]" and explains that "[a]n officer's commitment to public safety includes the welfare of members of the public, the officer, and fellow officers[.]"

The City of Seattle has the important government interest of ensuring the safety of both the public and its police officers. *See United States v. Salerno*, 481 U.S. 739, 748 (1987) ("[T]he Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."); *Jackson*, 746 F.3d at 965 (quoting *Chovan*, 735 F.3d at 1139) ("'It is self-evident,' . . . that public safety is an important government interest."). The record establishes that the City of Seattle enacted the UF Policy to address the important government objective of ensuring public safety and police officer safety. *See Chovan*, 735 F.3d at 1140 ("We hold that the government has met its burden to show that reducing domestic gun violence is an important government objective.").

At the second step, we consider whether there is a reasonable fit between the UF Policy and the City of Seattle's asserted objective of ensuring the safety of the public and its police officers. In determining the degree of fit between the challenged regulation and its asserted objective, the City of Seattle is "not required to show that [the UF Policy] is the least restrictive means of achieving its interest." *Fyock*, 779 F.3d at 1000 (citing *Jackson*, 746 F.3d at 966). To survive intermediate scrutiny, we must determine whether the

record shows that the UF Policy "promotes a 'substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* (quoting *Colacurcio v. City of Kent*, 163 F.3d 545, 553 (9th Cir. 1998)).

In this case, the UF Policy states that "[o]fficers shall only use objectively reasonable force, proportional to the threat or urgency of the situation, when necessary, to achieve a law-enforcement objective." The UF Policy also requires that Appellants use "[d]e-escalation tactics and techniques . . . when safe and without compromising law enforcement priorities," and states that Appellants "shall consider whether a subject's lack of compliance is a deliberate attempt to resist or an inability to comply based on" a variety of factors. Those provisions advance the City of Seattle's important government interest of ensuring the safety of the public by mandating de-escalation techniques and reducing the likelihood that a firearm will be drawn or used where such force is not "objectively reasonable," "proportional to the threat or urgency of the situation," or "necessary to achieve a law-enforcement objective."

The UF Policy also advances the City of Seattle's important government interest of ensuring the safety of its police officers. The UF Policy requires Appellants to employ de-escalation techniques only "[w]hen safe under the totality of the circumstances and time and circumstances permit." Thus, the UF Policy expressly contemplates that de-escalation techniques will not be feasible in every situation, and even states that "sometimes, the use of force is unavoidable." The UF Policy also provides that Appellants may use deadly force where an objectively reasonable officer would conclude that the "threat of death or serious physical injury to the officer or others is imminent." These provisions ensure that Appellants

may use their department-issued firearms to defend themselves and the public.

In adopting the UF Policy, the City of Seattle drew "reasonable inference[s]" that the UF Policy would assist in ensuring the safety of both the public and its police officers. *Jackson*, 746 F.3d at 966. The UF Policy advances an important government interest that would be achieved less effectively in its absence. *See Silvester*, 843 F.3d at 829 (concluding that a statute imposing a ten-day waiting period to purchase firearms on certain individuals was reasonably fit to state's public safety objective). Given the City of Seattle's important interest in promoting the safety of the public and its police officers, we determine there is a reasonable fit between the UF Policy and this significant goal. We conclude that the UF Policy survives intermediate scrutiny and is, therefore, constitutional under the Second Amendment. Because we find the UF Policy is constitutional, we affirm the district court's dismissal of the Second Amendment claim.

## IV.     The Substantive Due Process and Equal Protection Claims

We also affirm the district court's dismissal of the remaining claims. First, we agree with the district court that current case law does not support the existence of a freestanding fundamental right to self-defense outside of the "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Because precedent does not support recognizing the fundamental right Appellants' assert, Appellants' substantive due process claim is not a cognizable claim upon which relief can be granted.

Second, the district court properly concluded that Appellants failed to state a cognizable equal protection claim. Appellants failed to allege facts to support the claim that they are being denied a fundamental right while others are permitted to exercise such right, and that there is no valid justification for the distinction. Further, this claim is not cognizable under the Equal Protection Clause because it is "no more than a [Second] Amendment claim dressed in equal protection clothing[.]" *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001).

## CONCLUSION

The City of Seattle has a significant interest in regulating the use of department-issued firearms by its police officers, and the UF Policy does not impose a substantial burden on the Second Amendment right to use a firearm for the core lawful purpose of self-defense. Therefore, we apply intermediate scrutiny to determine whether the UF Policy violates the Second Amendment right of its police officers. We conclude that the UF Policy is constitutional under the Second Amendment because there is a reasonable fit between the UF Policy and the City of Seattle's important government interest in ensuring the safety of both the public and its police officers. We affirm the district court's dismissal of Appellants' Second Amendment claim.

We affirm the ruling of the district court on all other grounds.

**AFFIRMED.**