**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORDAN GALLINGER; BRIAN HILL;
BROOKE HILL; CRAIG DELUZ; SCOTT
DIPMAN; ALBERT DUNCAN; TRACEY
GRAHAM; LISA JANG; DENNIS
SERBU; MICHAEL VEREDAS;
FIREARMS POLICY FOUNDATION;
FIREARMS POLICY COALITION;
MADISON SOCIETY FOUNDATION;
THE CALGUNS FOUNDATION,
            *Plaintiffs-Appellants*,

                    v.

XAVIER BECERRA, in his official
capacity as Attorney General of
California,
            *Defendant-Appellee.*

No. 16-56125

D.C. No.
2:16-cv-02572-
BRO-AFM

OPINION

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted February 7, 2018
Pasadena, California

Filed August 3, 2018

Before:  M. Margaret McKeown,[*] William A. Fletcher,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

**SUMMARY**[**]

**Civil Rights**

The panel affirmed the district court's dismissal of an
action challenging California's 2015 amendment, Senate
Bill 707, to its Gun-Free School Zone Act.

In 1994, the California Legislature enacted the Gun-Free
School Zone Act, which banned the possession of firearms
on school grounds and within school zones (the area within
1,000 feet of school grounds). The Act exempted two
groups: (1) individuals licensed to carry a concealed firearm
under California law; and (2) retired peace officers
authorized to carry a loaded firearm. In 2015, the
Legislature passed Senate Bill 707, which preserved the
retired-officer exception for firearm possession on school
grounds, as well as within school zones, but prohibited
concealed carry weapon holders from possessing a firearm
on school grounds. Plaintiffs alleged that Senate Bill 707

---

[*] Judge McKeown was drawn to replace Judge Reinhardt on the
panel following his death. Ninth Circuit General Order 3.2h. Judge
McKeown has read the briefs, reviewed the record, and listened to oral
argument.

[**] This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

violated the Equal Protection Clause of the Fourteenth Amendment because it treated concealed weapon permit holders differently from retired peace officers.

The panel first rejected plaintiff's argument that *Silveira v. Lockyer*, controlled the outcome. In *Silveira*, the court held that the provision of California's Assault Weapons Control Act exempting retired peace officers from a statewide ban on assault weapons violated the Equal Protection Clause. 312 F.3d 1052, 1089-92 (9th Cir. 2002), *abrogated on other grounds by District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The panel held that there was a meaningful difference between the conduct regulated by the Assault Weapons Control Act and Senate Bill 707. The panel held that permitting retired peace officers to carry firearms other than assault weapons on school grounds was sufficiently connected to the goal of ensuring such officers' safety and public safety to survive rational-basis review.

The panel also rejected plaintiff's contention that Senate Bill 707 violates the Equal Protection Clause because it was enacted to favor a politically powerful group and to disfavor a politically unpopular one. The panel held that plaintiffs failed to plausibly allege that the Legislature enacted Senate Bill 707 to harm concealed carry permit holders.

---

**COUNSEL**

Stephen M. Duvernay (argued) and Bradley A. Benbrook, Benbrook Law Group PC, Sacramento, California, for Plaintiffs-Appellants.

John D. Echevarria (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General;

Marc LeForestier, Acting Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Defendant-Appellee.

Ilya Shapiro and Thomas Berry, Cato Institute, Washington, D.C., for Amicus Curiae Cato Institute.

**OPINION**

OWENS, Circuit Judge:

Plaintiffs-Appellants ("Plaintiffs"), individuals with permits to carry concealed weapons (and interested organizations), appeal from the dismissal of their challenge to California's 2015 amendment to its Gun-Free School Zone Act. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. California's Gun-Free School Zone Act of 1995 and Senate Bill 707

In 1994, the California Legislature ("the Legislature") enacted the Gun-Free School Zone Act, which banned the possession of firearms on school grounds and within school zones (the area within 1,000 feet of school grounds). Gun-Free School Zone Act of 1995, sec. 1, § 626.9(b), (e)(1), 1994 Cal. Stat. 6191, 6191–92. The Act exempted two groups: (1) individuals licensed to carry a concealed firearm under California law ("CCW permit holders"); and (2) "retired peace officer[s] . . . authorized to carry a loaded

firearm" ("retired peace officers").    § 626.9(l)–(m), 1994 Cal. Stat. at 6193.

In 2015, the Legislature considered an amendment to the Gun-Free School Zone Act, Senate Bill 707 ("SB 707"), that would give school officials control "of who, if anyone," could bring firearms onto their campuses.  *See* Cal. S. Comm. on Pub. Safety, Analysis of S.B. 707, 2015–2016 Reg. Sess., at 5 (Apr. 13, 2015).  SB 707, sponsored by State Senator Lois Wolk, was introduced in response to the "disturbing increase in the number of active shooter incidents on . . . campuses across the country" and the "alarming number of sexual assaults on college and university campuses."  *Id.*  Recognizing that "some gun rights proponents in other states ha[d] sponsored legislation to increase the opportunity for students and teachers to bring firearms on school campuses with CCWs, claiming this will deter" sexual assaults and active shooters, Senator Wolk highlighted research "indicat[ing] that bringing more firearms on campus will lead to more campus violence and increase the danger to students and others on campus."  *Id.* Senator Wolk thus introduced SB 707 to "ensure that students and parents who expect a campus to be safe and 'gun free' can be confident that their expectation is being met."  *Id.*

In returning control over firearm possession to school officials, the version of SB 707 that Senator Wolk originally introduced would have eliminated the Gun-Free School Zone Act's exception authorizing CCW permit holders and retired peace officers to carry firearms "on school grounds," though it would have retained the exceptions authorizing both groups to carry firearms "within school zones."  *Id.*; *see also* S.B. 707, sec. 1, § 626.9(c)(5)–(6), (l), (o), 2015–2016 Reg. Sess. (Cal. 2015) (as introduced).

But after substantial opposition from law enforcement organizations,[1] the Legislature passed a revised version of SB 707 that preserved the retired-officer exception for firearm possession on school grounds, as well as within school zones.[2] *See* Cal. Assemb. Comm. on Pub. Safety, Analysis of S.B. 707, 2015–2016 Reg. Sess., at 1 (July 13, 2015). Under the version of SB 707 that took effect, CCW permit holders could possess a firearm within school zones, but not on school grounds.[3] *See* Act of Oct. 10, 2015, sec. 1, § 626.9(b), (c)(5), 2015 Cal. Stat. 5689, 5690–92.

---

[1] We **GRANT** Plaintiffs' motion for judicial notice, which contains, among other documents, pre-amendment letters of opposition from law-enforcement organizations. *See Arce v. Douglas*, 793 F.3d 968, 978 n.4 (9th Cir. 2015).

[2] To qualify under this exception, a peace officer must be honorably retired from service and must obtain an endorsement from the agency from which he retired stating that the officer should be permitted to carry a concealed weapon. Cal. Penal Code § 626.9(o)(1) (2018); *see also id.* § 25455(a)–(c). In addition to retired sheriffs, sheriff's deputies, and municipal-police officers, the retired-officer exception covers certain retired employees of, among other agencies, the California Departments of (1) Fish and Game; (2) Parks and Recreation; and (3) Forestry and Fire Protection, as well as marshals who served at the California State Fair and retired federal agents. *Id.* § 626.9(o)(1); *see also id.* §§ 25450(a), 830.1(a), 830.2(e)–(i).

[3] The version of SB 707 enacted in 2015 allowed individuals to possess firearms on school grounds with the written permission of a school-district superintendent, his or her designee, or an equivalent school authority. Act of Oct. 10, 2015, sec. 1, § 626.9(b), 2015 Cal. Stat. 5689, 5690–92. The Gun-Free School Zone Act has since been amended by Assembly Bill 424, which eliminated the authority of school officials to provide such permission. *See* Act of Oct. 14, 2017, sec. 1, § 626.9(b), 2017 Cal. Stat. 5950, 5950 (codified at Cal. Penal Code § 626.9(b) (2018)). This amendment does not change our analysis.

### B. This Lawsuit

In 2016, Plaintiffs filed suit, arguing that SB 707's differential treatment of CCW permit holders and retired peace officers lacked a rational basis and thereby violated the Equal Protection Clause of the Fourteenth Amendment. The district court rejected that argument. While it agreed that the CCW permit holders and retired peace officers were "similarly situated" for constitutional purposes, the district court reasoned that the Legislature had a rational basis for treating retired peace officers differently on school grounds—unlike CCW permit holders, they risked facing enemies made during their law-enforcement careers, and this need for self-protection did not end when officers stepped on campus. "Therefore," the district court concluded, "allowing retired peace officers an exemption from the general ban of carrying concealed weapons on school property is rationally related to the legitimate state interest of ensuring their protection."

The district court also rejected Plaintiffs' Equal Protection argument that the Legislature impermissibly favored retired peace officers over "unpopular" civilian gun owners. Relying on *U.S. Department of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973), the district court reasoned that "[a]bsent evidence of explicit legislative intent to cause harm to civilian gun owners," Plaintiffs could not make out an Equal Protection violation.

Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss. *See Mahoney v. Sessions*, 871 F.3d 873, 877 (9th Cir. 2017). We take all factual allegations set forth in the

complaint as true and construe them in the light most favorable to the plaintiffs. *Id.* "Conclusory allegations of law," however, "are insufficient to defeat a motion to dismiss." *Id.* (citation omitted).

## III.    DISCUSSION

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

In analyzing Equal Protection claims, our "first step . . . is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). Once we have identified a classified group, we look for a control group, *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy, *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017). If the two groups are similarly situated, we determine the appropriate level of scrutiny and then apply it. *Id.* at 969.

Here, retired peace officers are the classified group, and Plaintiffs argue that CCW permit holders are the control group that is similarly situated to retired peace officers for purposes of scrutinizing SB 707. The State counters that retired peace officers and CCW permit holders are not similarly situated and would have us deny Plaintiffs' Equal Protection claim at this step. But we need not answer this question because, even assuming that the two groups are

similarly situated, we hold that SB 707 does not violate the Equal Protection Clause, given the applicable level of scrutiny. *See Nader v. Cronin*, 620 F.3d 1214, 1218–19 (9th Cir. 2010) (declining to address whether two groups are similarly situated because the classification was rationally related to a legitimate governmental interest).

The parties agree that rational-basis review is the appropriate standard: SB 707 implicates neither a suspect classification nor a fundamental right. *See Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc); *see also McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as . . . 'laws forbidding the carrying of firearms in sensitive places such as schools . . . .'" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). The parties also agree on the basic formulation of rational-basis review—that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440 (citations omitted). But their agreement ends there.

Plaintiffs argue that our decision in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570, requires that we deviate from the traditional application of rational-basis review by limiting the range of legitimate governmental interests available to sustain the classification drawn by SB 707. In *Silveira*, we held that the provision of California's Assault Weapons Control Act ("AWCA") exempting retired peace officers from a statewide ban on assault weapons violated the Equal

Protection Clause.**[4]**   *Id.* at 1089–92.   In applying rational-basis review to this law, we noted that "the retired officers' exception [was] contrary to the legislative goals of the AWCA."   *Id.* at 1091.   According to Plaintiffs, this and similar language in *Silveira* requires that we "scrutinize the connection, if any, between the goal of a legislative act and the way in which individuals are classified in order to achieve that goal," rather than consider *any* legitimate governmental interest in creating the classification.   Further, Plaintiffs contend, the Legislature's stated purpose in enacting SB 707 was to reduce the number of guns on school grounds, so, if we are to uphold the legislation, we must find the retired-officer exception—which would presumably increase the number of guns on campuses—rationally related to this specific goal.   We disagree.

In reviewing the AWCA's retired-officer exception, the *Silveira* court noted that the classification was "wholly unconnected to *any* legitimate state interest," *id.* at 1091 (emphasis added), and recognized its duty to "identify *any* hypothetical rational basis for the exception," *id.* at 1090. And if this language from *Silveira* did not persuade us to consider reasons for the classification beyond the Legislature's stated purpose for SB 707, the Supreme Court has made clear that we should.   *See, e.g.*, *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) ("[A] classification must

---

**[4]** More specifically, *Silveira* struck down a provision of the AWCA that allowed designated California agencies to sell or transfer assault weapons to sworn peace officers upon an officer's retirement. 312 F.3d at 1090–92. In 2010, the California Attorney General's Office issued an opinion concluding, in light of *Silveira*, that the AWCA also precludes retired peace officers who had purchased and registered assault weapons as active-duty officers from possessing those weapons in their retirement. *See* Opinion No. 09-901, 93 Ops. Cal. Atty. Gen. 130 (Dec. 31, 2010).

be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis *for the classification*." (emphasis added) (internal quotation marks omitted)); *Moreno*, 413 U.S. at 534 (explaining that because the "challenged statutory classification . . . is clearly irrelevant to the stated purposes of the Act," it "must rationally further some legitimate governmental interest other than those specifically stated in the congressional 'declaration of policy'" in order "to be sustained").

In applying rational-basis review, we thus find ourselves free to consider any "legitimate governmental interest" the State has in permitting retired peace officers to carry firearms on school grounds. *Moreno*, 413 U.S. at 534. The State claims two such interests: (1) the protection of retired peace officers and (2) public safety. Plaintiffs contest the validity of both.

First, Plaintiffs argue that the classification is both too broad and too narrow to be rationally related to retired-officer and public safety: It is too broad in that it includes many desk officers who have never carried or needed a firearm, and it is too narrow in that it leaves out people who have real and dangerous enemies. But this type of reasoning runs contrary to the Supreme Court's clear precedent upholding classifications that are "to some extent both underinclusive and overinclusive" under rational-basis review. *Vance v. Bradley*, 440 U.S. 93, 108 (1979). "[I]n a case like this perfection is by no means required." *Id.* (citations omitted); *see also United States v. Thornton*, 901 F.2d 738, 740 (9th Cir. 1990).

Second, Plaintiffs argue that *Silveira* forecloses victory for the State. Because we purportedly considered all possible reasons for the retired-officer exception in *Silveira*,

*see* 312 F.3d at 1091, Plaintiffs contend that in so doing we necessarily held that a classification permitting retired peace officers to carry *any* kind of firearm on school grounds cannot be rationally related to retired-officer or public safety. Plaintiffs' argument requires a logical leap that we decline to take.

The legislation at issue in *Silveira* was the AWCA, a law that bans the possession of assault weapons anywhere in the state without a permit.**[5]** *Id.* at 1057. *Silveira* tells us that exempting retired peace officers from that state-wide general ban and permitting them to carry *assault weapons* on school grounds is not rationally related to permissible legislative goals, including retired officer or public safety. At the same time, *Silveira* says nothing about the rational relationship between permissible legislative goals and SB 707's classification permitting retired peace officers to carry *other kinds of firearms* on school grounds.**[6]** Nor should it.

There is a meaningful difference between the conduct regulated by the AWCA and SB 707. This is true for the commonsense reason that assault weapons are more dangerous than other kinds of firearms. The particular danger posed by assault weapons motivated the Legislature to enact the AWCA in 1989. *See Silveira*, 312 F.3d at 1057 (citing Roberti-Roos Assault Weapons Control Act of 1989, sec. 3, § 12275.5, 1989 Cal. Stat. 60, 64 (codified as amended at Cal. Penal Code § 30505(a))). More specifically, it was the "random shooting" that year by an

---

**[5]** The AWCA defines "assault weapon" both by reference to specific makes and models, *see* Cal. Penal Code § 30510, and certain generic characteristics, *see id.* § 30515. *See also id.* § 16200.

**[6]** SB 707 defines "firearm" by reference to California Penal Code § 16520(a)–(d). *See* Cal. Penal Code § 626.9(e)(2).

individual with an AK-47 semi-automatic weapon that left five children dead, as well as one teacher and twenty-nine children wounded, at a California elementary school. *Id.*

Nearly thirty years later, these same dangers persist. Evidenced by the mass shootings perpetrated by individuals with military-style rifles and detachable magazines in Newtown, Connecticut; Aurora, Colorado; San Bernardino, California; Orlando, Florida; Binghamton, New York; Tucson, Arizona; and Las Vegas, Nevada, among others, these dangers have moved other state and local legislatures to enact their own bans on assault weapons and detachable large-capacity magazines in more recent years. *See, e.g.*, *Kolbe v. Hogan*, 849 F.3d 114, 120 (4th Cir. 2017) (en banc) (upholding Maryland's Firearm Safety Act); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 249–51, 261–64 (2d Cir. 2015) (upholding prohibitions on assault weapons and large-capacity magazines in New York's Secure Ammunition and Firearms Enforcement Act and Connecticut's Act Concerning Gun Violence Prevention and Children's Safety); *Friedman v. City of Highland Park*, 784 F.3d 406, 407, 412 (7th Cir. 2015) (upholding City of Highland Park's ordinance prohibiting possession of assault weapons and large-capacity magazines); *Heller v. District of Columbia*, 670 F.3d 1244, 1263–64, 1269 (D.C. Cir. 2011) (upholding District of Columbia's Firearms Registration Amendment Act). As the Fourth Circuit recognized in upholding Maryland's ban on such arms in *Kolbe*, when "assault weapons and large-capacity magazines are used, more shots are fired and more fatalities and injuries result than when shooters use other firearms and magazines."[7]

---

[7] The legislation at issue in *Kolbe*, Maryland's Firearm Safety Act, contained an exemption permitting retired officers to carry assault weapons that was challenged under the Equal Protection Clause.

*Kolbe*, 849 F.3d at 127; *see also Friedman*, 784 F.3d at 409 ("We know . . . that semi-automatic guns with large-capacity magazines enable shooters to fire bullets faster than handguns equipped with smaller magazines.").

The exceptional lethality of such arms was not the Fourth Circuit's only reason for upholding the legislature's ban in *Kolbe*. The court also highlighted a "lack of evidence that the banned assault weapons and large-capacity magazines are well-suited to self-defense." *Kolbe*, 849 F.3d at 127; *see also Heller*, 670 F.3d at 1262 (citing Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. Crim. L. & Criminology 150, 177 (1995), for the "finding that of 340,000 to 400,000 instances of defensive gun use in which the defenders believed the use of a gun had saved a life, 240,000 to 300,000 involved handguns"). This is consistent with the Supreme Court's *Heller* decision, which recognized that "handguns are the most popular weapon chosen by Americans for self-defense." 554 U.S. at 629. In short, while the inherent risks that accompany carrying assault weapons for self-defense or public-safety purposes may outweigh any increased benefits to a retired officer's or the public's safety, the same need not be true for other kinds of firearms.

---

849 F.3d at 146. The Fourth Circuit upheld the exemption, concluding that retired officers and the general public are not "similarly situated . . . with respect to the banned assault weapons and large-capacity magazines." *Id.* at 147. In so doing, the Fourth Circuit acknowledged its split from *Silveira*. *See id.* at 147 n.18. Because we hold that the classification in SB 707 is rationally related to legitimate governmental interests, we need not and do not address whether CCW permit holders are similarly situated to retired peace officers for purposes of SB 707.

And when we consider the distinction between assault weapons and other firearms through the lens of rational-basis review, we easily conclude that *Silveira* does not control the outcome here. To survive rational-basis review, the "State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446. A classification will be upheld, however, when "the statute is rationally related to a legitimate interest." *Id.* at 440.

With regard to retired-officer safety, in *Silveira* we held that permitting retired peace officers to carry *assault weapons* was too attenuated from the goal of ensuring their safety. Here, we hold that permitting retired peace officers to carry *other* kinds of firearms on school grounds is sufficiently connected to the goal of ensuring such officers' safety to survive rational-basis review. In so doing, we refuse to second-guess the Legislature's determination that (1) retired peace officers are at a heightened risk of danger based on their previous exposure to crime, and (2) allowing them to carry firearms other than assault weapons on school grounds mitigates that risk and increases officer safety.

This brings us to the second reason the State advances for upholding this classification: public safety. While *Silveira* recognized that the Legislature's interest in public safety was too attenuated from the retired-officer classification in the context of assault weapons, *see* 312 F.3d at 1091, here we hold that the Legislature's interest in public safety is sufficiently connected to permitting retired peace officers to carry other kinds of firearms on school grounds. As the State argues, the Legislature is free to conclude that retired peace officers, as a class, are more skilled in the use of firearms due to the extensive training in the safe storage and operation of firearms that law enforcement personnel

receive. And as the California College and University Police Chiefs Association argued in opposing the original version of SB 707 that applied the school-grounds ban equally to retired peace officers, their training further permits the Legislature's conclusion that retired peace officers offer "a distinct asset in [the] ability to carry out" the mission of campus safety. *See* Cal. S. Comm. on Pub. Safety, Analysis of S.B. 707, 2015–2016 Reg. Sess., at 6 (Apr. 13, 2015). Accordingly, the Legislature may legitimately decide to authorize retired peace officers, and retired peace officers alone, to carry firearms other than assault weapons on school grounds.

Finally, we turn to Plaintiffs' argument that SB 707 violates the Equal Protection Clause because it was enacted to "favor[] a politically powerful group and to disfavor a politically-unpopular one." Plaintiffs, as well as the Cato Institute as amicus curiae, argue that the district court erred in holding that Plaintiffs could not establish a violation of the Equal Protection Clause because they failed to present "evidence of explicit legislative intent to cause harm to civilian gun owners." It is true that animus need not be explicit in the legislative history for a plaintiff to establish impermissible intent. *See City of Cleburne*, 473 U.S. at 447–50. At the same time, we do not credit conclusory allegations of law that are unsupported by specific factual allegations. *See Mahoney*, 871 F.3d at 877.

Here, Plaintiffs have not made any factual allegations to support their theory of "impermissible animus." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (citation omitted). They rely on SB 707's legislative history, as well as letters and newspaper articles of which we have taken judicial notice, to demonstrate that the Legislature retained the retired-officer exception as the

result of "political pressure," after "potent lobbying efforts by the law enforcement community." Undeniably, this record demonstrates that the retired-officer exception was a product of lobbying efforts by law-enforcement organizations. But the right to lobby is constitutionally protected. *Cf. Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 545 (1983). A plaintiff cannot establish invidious discrimination by merely alleging that a legislature responded to such efforts, and, not surprisingly, Plaintiffs fail to cite any authority to the contrary.[8]

Accommodating one interest group is not equivalent to intentionally harming another. *Moreno* and *City of Cleburne*, the two cases upon which Plaintiffs rely, make this distinction clear. In *Moreno*, the Supreme Court held that a classification making federal food stamps available to households of related persons but not to households of unrelated persons violated the equal-protection component of the Fifth Amendment's Due Process Clause because the legislative history revealed Congress's purpose "to prevent socalled 'hippies' and 'hippie communes' from participating in the food stamp program." 413 U.S. at 534 (citation omitted). Similarly, in *City of Cleburne*, the Court found that a municipal zoning ordinance requiring special-use permits for the operation of a group home for the intellectually disabled violated the Equal Protection Clause

---

[8] Plaintiffs do not allege that the lobbying efforts by law-enforcement agencies advocated harming CCW permit holders. We do not suggest that legislatures may legitimately give effect to lobbying efforts that advocate harming another interest group. *See City of Cleburne*, 473 U.S. at 448 ("[T]he City may not avoid the strictures of [the Equal Protection] Clause by deferring to the wishes or objections of some fraction of the body politic."); *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.").

because the permitting requirement "appear[ed] to rest on an irrational prejudice against" and "negative attitudes, or fear," about those with special needs.   473 U.S. at 448, 450. "[B]are [legislative] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Moreno*, 413 U.S. at 534.

In asserting that the Legislature exempted retired peace officers from the school-grounds firearm ban due to "potent lobbying efforts by the law enforcement community," Plaintiffs have not plausibly alleged that the Legislature enacted SB 707 to harm CCW permit holders.  Accordingly, we do not find that "impermissible animus toward an unpopular group prompted the statute's enactment." *Animal Legal Def. Fund*, 878 F.3d at 1200 (citation omitted).

In any event, we have already concluded that the classification at issue serves legitimate state interests in retired-officer and public safety.  This conclusion, on its own, prevents Plaintiffs from succeeding on their Equal Protection claim.[9]  *See id.* ("[A] court may strike down [a] statute under the Equal Protection Clause if the statute serves no legitimate governmental purpose *and* if impermissible animus toward an unpopular group prompted the statute's

---

[9] A plaintiff arguing that impermissible animus motivated a legislature's enactment of a law typically asks that we "apply a 'more searching' application of rational basis review" if we agree that the law was enacted, at least in part, "to harm an unpopular group." *Animal Legal Def. Fund*, 878 F.3d at 1200 (quoting *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring in the judgment)).  Here, Plaintiffs did not argue for a more searching rational-basis review based on their animus argument, and, regardless, we find that SB 707 was not enacted to harm CCW permit holders.  Ordinary rational-basis review is thus appropriate.

enactment." (citations and internal quotation marks omitted)).

We therefore affirm the district court.[10]

**AFFIRMED.**

---

[10] The district court did not abuse its discretion in dismissing Plaintiffs' complaint with prejudice. Plaintiffs cannot set forth facts that will establish an Equal Protection violation given the deferential nature of rational-basis review. Amendment would therefore be futile.