**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAJESHREE EUNICE ROY, AKA Rajeshree Eunice Willis, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent*. | No. 15-72942 Agency No. A038-791-594 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 28, 2020
San Francisco, California

Filed June 4, 2020

Before:  J. Clifford Wallace, Ronald Lee Gilman,[*]
and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

Dismissing Rajeshree Roy's petition for review of a decision of the Board of Immigration Appeals, the panel concluded that Petitioner failed to establish an equal protection violation with respect to 8 U.S.C. § 1432(a)(3), the applicable derivative-citizenship statute.

Petitioner was born in Fiji in 1974 to two Fijian citizens who never married. In 1983, her father naturalized, and her mother formally relinquished parental rights and gave full custody to the father. In 1984, Petitioner entered the United states as a lawful permanent resident, but was later charged as removable based on criminal convictions. She moved to terminate proceedings, challenging the constitutionality of 8 U.S.C. § 1432(a)(3). An immigration judge denied the motion, and the BIA dismissed Petitioner's appeal.

Before this court, Petitioner argued that the second clause of § 1432(a)(3) discriminates by gender and legitimacy and thus violates the Constitution's guarantee of equal protection. The panel noted that the court generally lacks jurisdiction to review a final order of removal against a non-citizen whose commission of a certain type of crime rendered her removable, 8 U.S.C. § 1252(a)(2)(C), but that the court retains jurisdiction to review legal questions, including whether § 1252(a)(2)(C)'s jurisdictional bar applies.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that Petitioner's gender-discrimination claim failed because she was not similarly situated to persons who derived citizenship under § 1432(a)(3)'s second clause. The panel explained that the clause discriminates on the basis of gender because it grants citizenship upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation," but does not grant citizenship in the converse scenario: upon the naturalization of the father if the child was born out of wedlock and the child's maternity has not been established by legitimation. The panel noted that Petitioner did not, and could not, challenge this clearly disparate treatment because both her paternity and maternity were established during her youth.

However, Petitioner argued that the clause discriminates because it does not contain an equivalent provision stating that a child derives citizenship upon the naturalization of the father where the child was born out of wedlock, and the mother relinquished paternal rights or gave up the child. The panel rejected this argument, explaining that the second clause says nothing about the relinquishment of parental rights or the abandonment of a child; rather, it hinges on whether a father legitimated his child. Thus, the panel concluded that Petitioner did not suffer from a gender-based distinction; she simply did not meet the statute's criteria.

The panel also rejected Petitioner's legitimacy-discrimination claim. Petitioner contended that § 1432(a)(3)'s use of legitimation as a criterion inherently discriminates on the basis of gender because a father cannot legitimate a child simply by being present for the child's birth. However, the panel concluded that, because both fathers and mothers can legitimate a child after the child's

birth, legitimation is not inherently discriminatory. Further, the panel concluded that Petitioner was not similarly situated to a person who derived citizenship under the clause because both her parents had legitimated.

To the extent that Petitioner raised a legitimacy-discrimination claim based on the first clause of § 1432(a)(3), which grants citizenship to a child upon naturalization of the parent with legal custody when there has been a legal separation of the parents (and therefore does not provide citizenship where the parents were never married), the panel observed that this court's decision *United States v. Mayea-Pulido*, 946 F.3d 1055 (9th Cir. 2020), foreclosed such a challenge.

Accordingly, because Petitioner is not a United States citizen, the panel concluded that it lacked jurisdiction to review her final order of removal.

---

### COUNSEL

Delanie Grewe (argued), Certified Law Student; Holly S. Cooper (argued) and Michael Benassini, Supervising Attorneys, U.C. Davis School of Law, Immigration Law Clinic, Davis, California; Kasdin M. Mitchell (argued), Erin E. Murphy, and Michael D. Lieberman, Kirkland & Ellis LLP, Washington, D.C.; for Petitioner.

Tim Ramnitz (argued) and Laura M.L. Maroldy, Attorneys; Shelley R. Goad, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation,

Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Lisa Weissman-Ward, Jayashri Srikantiah, and Brittany Benjamin, Stanford Law School, Immigrants' Rights Clinic, Stanford, California, for Proposed Intervenor.

## OPINION

GRABER, Circuit Judge:

Petitioner Rajeshree Roy challenges her pending removal to Fiji. Petitioner contends that, as a result of her father's naturalization in 1983, she should have become a United States citizen automatically when she was admitted to the United States as a permanent resident the next year. That did not happen.

The applicable derivative-citizenship statute, former 8 U.S.C. § 1432(a)(3),[1] contains two clauses. The first clause grants citizenship to a child upon the "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." *Id.* We upheld that clause as constitutional in *United States v. Mayea-Pulido*, 946 F.3d 1055 (9th Cir. 2020).

---

[1] We assess claims of derivative citizenship "under the law in effect at the time the critical events . . . occurred." *Ayala-Villanueva v. Holder*, 572 F.3d 736, 738 (9th Cir. 2009) (quoting *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005)). All citations to § 1432 in this opinion refer to the version in effect in 1984.

Section 1432(a)(3)'s second clause grants citizenship to a child upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." Petitioner argues that this clause discriminates by gender and legitimacy and thus violates the Constitution's guarantee of equal protection.

Because Petitioner's paternity and maternity were both established when she was a child, she is not similarly situated to persons who derived citizenship under § 1432(a)(3)'s second clause. Thus, her constitutional challenge fails. Accordingly, because Petitioner is not a United States citizen, we dismiss the petition for review.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was born in Fiji in 1974 to two Fijian citizens. Her parents had four children together, but they never married. Petitioner's mother moved to Australia in 1975, and her father immigrated lawfully to the United States soon after. Petitioner remained in Fiji with her paternal grandmother for nearly a decade.

In 1983, Petitioner's father became a naturalized United States citizen. Through proceedings in Australia, Petitioner's mother formally relinquished her parental rights over Petitioner and gave full custody to Petitioner's father. Petitioner's father then filed a visa application for Petitioner to live with him in the United States. The parties agree that Petitioner's paternity was legitimated at some point before she turned 18, either because her father's name appeared on

her birth certificate (along with her mother's name) or because her father identified her as his daughter on the visa application. Petitioner entered the United States as a lawful permanent resident in 1984; her father raised her from that point forward with minimal involvement from her mother, who still lives in Australia.

In 1991, Petitioner was convicted of nine criminal charges, including assault and battery. She served a 14-year sentence for those convictions, which she concedes would render a non-citizen removable from the United States. In 2011, Petitioner was convicted of shoplifting. The government commenced removal proceedings upon her release from prison in 2014.

Petitioner moved to terminate the removal proceedings, arguing that she should have derived citizenship from her father. Specifically, Petitioner argued that § 1432(a)(3) unconstitutionally fails "to recognize the rights of fathers who act as sole caretakers for their out-of-wedlock children." An immigration judge denied Petitioner's motion to terminate because he lacked jurisdiction to address her constitutional claim. Likewise, the Board of Immigration Appeals dismissed Petitioner's appeal because it lacked jurisdiction to consider her constitutional claim. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam). Petitioner timely sought our review.

JURISDICTION AND STANDARD OF REVIEW[2]

Although we generally lack jurisdiction to review a final order of removal against a non-citizen whose commission of a certain type of crime rendered her removable, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction under § 1252(a)(2)(D) to review legal questions, including whether § 1252(a)(2)(C)'s jurisdictional bar applies. Here, because there is no genuine dispute of material fact, we may determine Petitioner's citizenship "as a matter of law." *Mustanich v. Mukasey*, 518 F.3d 1084, 1087 (9th Cir. 2008) (citing § 1252(b)(5)(A)). We review de novo legal and constitutional questions arising from removal proceedings. *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012).

DISCUSSION

To prevail on her equal-protection claim, Petitioner "must show that a class that is similarly situated has been treated disparately." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957,

---

[2] Contrary to the government's view, Petitioner has standing to challenge § 1432(a)(3)'s constitutionality. Specifically, the alleged constitutional violation, if it existed, would be redressable. We have held that courts may grant citizenship "as a remedy to rectify constitutional violations." *Brown v. Holder*, 763 F.3d 1141, 1149 (9th Cir. 2014). *See also Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1418 (9th Cir. 1993) (explaining that an award of citizenship falls within "the traditional authority of the courts to remedy equal protection violations by extending the benefits of a discriminatory statute to a disfavored class"). And the Supreme Court has affirmed the addition of new text to a statute as a remedy "to render [an unconstitutional] program gender neutral." *Califano v. Westcott*, 443 U.S. 76, 93 (1979).

966 (9th Cir. 2017) (internal quotation marks omitted).**[3]**  In analyzing Petitioner's claim, we first "identify the [government's] classification of groups" in the statute. *Id.* (quoting *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)).  After identifying a "classified group," we search for a comparative group "composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the [government's] challenged policy." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).  "*If* the two groups are similarly situated, we determine the appropriate level of scrutiny and then apply it." *Id.* (emphasis added).

Section 1432(a) provides (with emphasis added to the challenged clause):

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or

---

**[3]** Petitioner challenges federal legislation, so the "applicable equality guarantee" comes from the Fifth Amendment's Due Process Clause rather than the Fourteenth Amendment's Equal Protection Clause. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017).  The Fifth Amendment prohibits "discrimination that is so unjustifiable as to be violative of due process." *Id.* (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).  Despite the textual differences between the two amendments, the "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Id.* (quoting *Weinberger*, 420 U.S. at 638 n.2).

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or *the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation*; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

The parties agree that Petitioner satisfied the criteria of (a)(4) and (a)(5).

## A. *Petitioner's Gender-Discrimination Claim*

Section 1432(a)(3)'s second clause discriminates on the basis of gender. It grants citizenship upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation," but it does not grant citizenship in the converse scenario: upon the naturalization of the *father* if the child was born out of wedlock and the child's *maternity* has not

been established by legitimation. Although that scenario is unlikely, it is not impossible. For example, an unmarried mother could give birth at her home and then leave the baby on the father's doorstep. The father could get a DNA test to confirm his relationship to the baby, but if he had sex with more than one woman approximately nine months earlier, the child's maternity would remain unknown. And, as we discuss later, the mother could legitimate her relationship to the child well after the child's birth.

Petitioner, however, does not challenge the clearly disparate treatment identified above. Nor could she, because both her paternity and her maternity were established during her youth. Instead, she argues that the statute unconstitutionally discriminates "because it does not contain any equivalent provision stating that a child automatically becomes a citizen upon the naturalization of the father if the child was born out of wedlock and the mother has relinquished parental rights" or has abandoned the child.

We disagree. Section 1432(a)(3)'s second clause says nothing about the relinquishment of parental rights or the abandonment of a child. Rather, it hinges derivative citizenship on whether a father legitimated his child. A father who fails to legitimate his out-of-wedlock child might also abandon the child, but the two actions are not identical. For example, a father could legitimate his child and *then* abandon the child later. Thus, Petitioner's proposed comparative group does not align with the classified group "in respects that are relevant to the [government's] challenged policy." *Gallinger*, 898 F.3d at 1016.

Petitioner's circumstances illustrate the disconnect between the classified group and her proposed comparative

group. Even if Petitioner's parents' roles in her life had been reversed—that is, if her mother had naturalized and raised her in the United States and her father had "abandoned" her—she still would not have derived citizenship under § 1432(a)(3), because her father legitimated her. Section 1432(a) provides three avenues to derivative citizenship for legitimated children, and none of them "depends on the sex of the parent (or parents) who naturalize or have custody." *Wedderburn v. INS*, 215 F.3d 795, 802 (7th Cir. 2000).

Under § 1432(a), "[l]egitimated children become citizens if both parents naturalize, if the surviving parent naturalizes, or if the parent having 'legal custody' naturalizes following the parents' 'legal separation.'" *Id.* (quoting § 1432(a)(3)). In other words, Petitioner did not suffer from a gender-based distinction; she simply did not meet the statute's criteria. *See Levy v. U.S. Att'y Gen.*, 882 F.3d 1364, 1367 (11th Cir. 2018) (per curiam) (listing the conditions under which a legitimated child would derive citizenship through § 1432(a) and stating that "[n]one of those conditions turns on gender"); *accord Barthelemy v. Ashcroft*, 329 F.3d 1062, 1068 (9th Cir. 2003) ("[Section 1432(a)(3)] makes no sex-based distinction when the petitioner has been legitimated."), *overruled in part on other grounds, as recognized in Mayea-Pulido*, 946 F.3d at 1062.

Petitioner's proposed remedy also makes clear the legal infirmity of her equal-protection claim. She suggests that we should modify the second clause of § 1432(a)(3) to provide for derivative citizenship upon:

> [T]he naturalization of the ~~mother~~ *parent with sole legal custody of the child* if the child was born out of wedlock and ~~the paternity of the~~

> ~~child has not been established by legitimation~~ *the other parent has relinquished parental rights*.

Petitioner's suggestion does not simply correct a gender disparity—it rewrites the statute entirely. No matter how preferable her version might be as a policy matter,[4] we lack the power to amend statutes to accommodate policy preferences. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012) (explaining that "the pros and cons" of a particular policy "are for the consideration of Congress, not the courts").

The Constitution's guarantee of equal protection forbids "governmental decisionmakers from treating differently persons who are in all *relevant* respects alike." *Dream Act*, 855 F.3d at 966 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Because Petitioner's father legitimated her, she does not resemble, in all relevant ways, persons who derived citizenship under § 1432(a)(3)'s second clause. *Gallinger*, 898 F.3d at 1016. We therefore do not apply any level of scrutiny to the second clause's gender distinction, much less the heightened scrutiny that *Morales-Santana*, 137 S. Ct. at 1690, applied to a different gender distinction, because

---

[4] Congress repealed § 1432 when it enacted the Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103, 114 Stat. 1631, 1632. Under the Child Citizenship Act, a child born outside the United States derives citizenship when the child meets certain other conditions (which Petitioner undisputedly met here) and "[a]t least one parent of the child is a citizen of the United States, whether by birth or naturalization." 8 U.S.C. § 1431(a). But that rule does not apply retroactively to people (such as Petitioner) who already had turned 18 when the law took effect in 2001. *Hughes v. Ashcroft*, 255 F.3d 752, 760 (9th Cir. 2001).

Petitioner's gender-discrimination claim fails at the outset, *Gallinger*, 898 F.3d at 1016.

### B. *Petitioner's Legitimacy-Discrimination Claim*

Petitioner's legitimacy-discrimination claim is largely an extension of her gender-discrimination claim, but we address that claim separately here. Petitioner contends that § 1432(a)(3)'s use of legitimation (or lack thereof) as a criterion inherently discriminates on the basis of gender because a father cannot legitimate a child simply by being present for the child's birth. Regardless, because both fathers and mothers *can* legitimate a child after the child's birth, legitimation is not inherently discriminatory on the basis of gender.

Consider our earlier example of a hypothetical mother who gave birth at home and then left her baby on the father's doorstep, thus keeping her maternity a mystery. That mother could reappear later in the child's life to establish her maternity by legitimation, whether through a DNA test or some other mechanism. For instance, in California (where Petitioner's father has lived since coming to the United States), the mother could establish a "parent and child relationship" by providing "proof of having given birth to the child." Cal. Fam. Code § 7610(a).

Now recall the version of § 1432(a)(3)'s second clause with reversed gender roles, which would grant citizenship "upon the naturalization of the *father* if the child was born out of wedlock and the child's *maternity* has not been established by legitimation." Reversing the gender roles does not help Petitioner. Her mother and father both legitimated her when she was a child, so she does not resemble, in all relevant

ways, persons who derived citizenship under § 1432(a)(3)'s second clause. *Gallinger*, 898 F.3d at 1016. Again, because Petitioner is not similarly situated to persons who derived citizenship under § 1432(a)(3)'s second clause, we do not apply any level of scrutiny to that clause's gender or legitimacy distinction, and Petitioner's repackaged gender-discrimination claim still fails. *Id.*

To the extent that Petitioner raises a legitimacy-discrimination claim that is distinct from her gender-discrimination claim, *Mayea-Pulido* forecloses her claim. There, we explained that children born to unmarried parents could obtain derivative citizenship under § 1432(a)(3) "if [their] parents later married and then legally separated, the same as a marital child whose parents were married at his birth but later [legally] separated." *Mayea-Pulido*, 946 F.3d at 1064. If Petitioner's parents had married at some point after her birth and then legally separated before she turned 18 (and if her father had sole custody), she would have derived citizenship from her father under § 1432(a)(3)'s first clause.

Likewise, Petitioner would have derived citizenship from her father under § 1432(a)'s other subsections if she had met the relevant criteria: (1) both parents naturalized; or (2) one parent (her mother) died and the surviving parent (her father) naturalized. Thus, contrary to Petitioner's view, the statute does not impose a categorical bar against unwed fathers passing citizenship to children born out of wedlock. If anything, § 1432(a)(3)'s second clause gives children born to unmarried parents "an extra route to citizenship, one not enjoyed by legitimate (or legitimated) offspring." *Wedderburn*, 215 F.3d at 802.

Petitioner's constitutional challenge to § 1432(a)(3) fails, so we cannot grant her derivative citizenship. Accordingly, because Petitioner is not a citizen of the United States, we lack jurisdiction to review her final order of removal. 8 U.S.C. § 1252(a)(2)(C).

**PETITION DISMISSED.**