[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13879

_____

GARY WALTERS,

Plaintiff-Appellant,

*versus*

FAST AC, LLC,
Florida limited liability company,
FTL CAPITAL PARTNERS, LLC,
foreign limited liability company,
d.b.a. FTL Capital Finance,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cv-00070-JLB-MRM

_____

Before LAGOA, BRASHER, and ED CARNES, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about Article III standing. Gary Walters agreed to purchase air conditioning repairs he could not afford from Fast AC, LLC, by taking out a loan with FTL Capital Partners, LLC. He did so after a Fast AC employee lied about the price of FTL's loan and prevented Walters from viewing FTL's loan paperwork. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, requires a lender like FTL to provide certain disclosures about the cost of the loan. Walters sued FTL, claiming that it violated TILA because it did not provide him those disclosures. According to Walters, had he received the proper disclosures, he would not have accepted the loan.

The only question on appeal is whether Walters has standing to bring this TILA claim against FTL. According to FTL, Walters's injuries are not traceable to FTL's disclosure paperwork because Fast AC never showed Walters any paperwork. We agree that, if Fast AC's conduct was independent of FTL, then Walters's injuries are not traceable to FTL. But Walters argues that Fast AC is *not* independent of FTL because Fast AC was acting as FTL's agent. Under this agency theory of liability, Walters argues that

FTL is liable under TILA for Fast AC's failure to provide the required disclosures. Because we conclude that Walters has standing to raise this agency-based TILA claim against FTL, we reverse.

## I.

TILA imposes "mandatory disclosure requirements on those who extend credit to consumers in the American market." *Mourning v. Fam. Publ'ns. Serv., Inc.*, 411 U.S. 356, 363 (1973). The specific disclosures TILA requires vary depending on whether the credit provided is "closed-end" or "open-end." The details of the two credit types and their respective disclosure obligations are unimportant here. Suffice it to say that TILA requires lenders extending closed-end credit (but not those extending open-end credit) to disclose, among other things, the number of monthly payments, the cost of those payments, and the total loan amount. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 1026.18.

FTL Capital Partners, LLC finances home-improvement loans for heating and air conditioning products. FTL partners with contractors who provide those products to customers who wish to pay for the contractor's products through financing. Customers who want to pay for a contractor's services through financing must apply to FTL. If FTL approves the application, FTL sends loan documents, including applicable disclosures, to the customer's personal email. Customers must answer security verification questions before they can access the loan documents in their inbox.

Fast AC, LLC was an FTL-registered contractor from 2016 until 2019, when it was "expelled" for falsely representing to FTL "various times" that it had completed installation work it never performed. During that time, Fast AC employees would go to consumers' homes to sell them its heating and cooling services on credit financed by FTL.

One of those consumers was Gary Walters, a 70-year-old, retired army veteran who lives in Florida with his wife. Walters suffers from Parkinson's disease and other health issues. He cannot walk long distances and uses a wheelchair.

Because we are reviewing a grant of summary judgment, we accept Walters's testimony as true, "affording all justifiable inferences" to Walters. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). According to Walters, Fast AC contacted him, offering to conduct a free cleaning and inspection of Walters's AC unit. Fast AC sent its employee, Mike, to Walters's home to perform the work. After spending a few minutes in Walters's attic (with no tools or cleaning supplies), Mike told Walters that his unit's ductwork was "shot" and that, if Walters did not replace it "real soon," he would "have really bad problems." The total cost of replacing the ductwork was $5,500—more than Walters could afford—but Mike falsely told Walters that it would cost only $50 a month if he secured financing with FTL.

Walters reluctantly agreed. But Walters did not himself fill out FTL's credit application or even see any of the loan paperwork. Instead, Mike got on Walters's computer and "took care" of all the

necessary financing paperwork for him by completing, e-signing, and submitting the loan application in Walters's name, thereby concealing FTL's loan documents from him.

Before Fast AC began the ductwork repair, Walters changed his mind and decided to cancel the job. Although he was able to cancel the repairs themselves, Fast AC's representative told him that, to cancel the financing agreement, Walters would have to "call the finance company" directly. Over the next several weeks, there was an unproductive back-and-forth between Walters, Fast AC, and FTL via telephone. FTL sent Walters bills, past-due notices, and demand letters to pay for the ductwork repair that Fast AC never performed. Walters never paid FTL, but FTL did not release him from the loan. Instead, FTL reported negative payment activity on Walters's credit report to TransUnion.

Walters testified in his deposition that the unpaid loan negatively impacted his credit score and prevented him from purchasing a truck and from refinancing his home. Additionally, Walters said he spent money faxing documents to his attorney and experienced emotional distress because of the disputed debt.

Walters sued Fast AC and FTL in the Middle District of Florida. He asserted various state law consumer protection claims against Fast AC. Against FTL, he asserted state law claims and one federal TILA claim. Walters's TILA claim against FTL is the sole basis for federal subject matter jurisdiction over his suit. *See* 28 U.S.C. §§ 1331, 1367(a). On the merits of that claim, Walters alleged that his loan from FTL was a closed-end transaction, but that

FTL did not disclose the loan amount, finance charge, or monthly payments. FTL's credit agreement—which Walters never saw—included only open-end disclosures.

The district court concluded that Walters lacked standing to bring his TILA claim and granted summary judgment for FTL. Specifically, the district court determined that Walters had not suffered an injury in fact because his injuries were not caused by FTL's TILA violation. Because Walters's TILA claim against FTL was the only claim over which the district court had original jurisdiction, the court did not exercise supplemental jurisdiction over Walters's remaining state law claims against Fast AC and FTL. *See* 28 U.S.C. § 1367(a). In an order denying Walters's motion for reconsideration, the district court rejected Walters's argument that its summary judgment order had conflated the injury-in-fact element with traceability. The district court also concluded that Walters had not alleged in his complaint that Fast AC was acting as FTL's agent to provide the required disclosures.

Walters appealed.

## II.

We must decide whether Walters has standing to bring his TILA claim against FTL in federal court. This "is a threshold jurisdictional question that we review de novo." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc).

"The requisite elements of Article III standing are well established . . . ." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646

(2022). The plaintiff must show (1) "that he suffered an injury in fact that is concrete, particularized, and actual or imminent," (2) that the injury is traceable to—that is, "was likely caused by"—the defendant's legal violation, and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of proving each of these standing elements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, "in response to a summary judgment motion, 'the plaintiff . . . must "set forth" by affidavit or other evidence specific facts'" showing he was injured, by the defendant's legal violation, in a manner amenable to judicial relief. *Ga. Republican Party v. Secs. & Exch. Comm'n*, 888 F.3d 1198, 1201 (11th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

We will address each element of standing separately.

### A.

We begin with injury in fact. To satisfy this requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "An injury is concrete," we have said, "if it actually exists"—meaning, "it is 'real, and not abstract.'" *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc)

(quoting *Spokeo*, 578 U.S. at 340). And "[a]n injury is 'particularized' if it 'affect[s] the plaintiff in a personal and individual way.'" *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (second alteration in original) (quoting *Spokeo*, 578 U.S. at 339).

Walters identified several concrete, particularized harms in this case. He testified in his deposition that (1) he was forced to spend time disputing his debt; (2) his credit took a hit, preventing him from making other purchases or refinancing his home; (3) he spent money faxing documents to his attorney; and (4) he felt anxious, exploited, embarrassed, and worthless.

Our precedent recognizes each of these harms as a concrete injury in fact. We have held that such injuries include not only "straightforward economic injuries," like lost money, but also "more nebulous" ones, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021), like wasted time, missed credit opportunities, and emotional distress. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a concrete harm . . . ."); *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) (reduced credit score and "lost credit opportunities" are concrete economic harms). And a plaintiff like Walters, who suffers these concrete harms himself, necessarily satisfies the particularity requirement, too. *See Lujan*, 504 U.S. at 560 n.1 (stating an injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way").

FTL makes three arguments that Walters did not suffer an injury in fact, notwithstanding our precedent.

First, FTL challenges the sufficiency of Walters's evidence. FTL suggests that, to survive summary judgment on standing, Walters needed to submit "documentation" to corroborate his deposition testimony detailing his injuries. But we have explicitly held that a plaintiff's "self-serving and/or uncorroborated" testimony can be enough on its own "to preclude summary judgment." *United States v. Stein*, 881 F.3d 853, 857–59 (11th Cir. 2018) (en banc). Here, Walters testified to matters within his personal knowledge. *See* Fed. R. Evid. 602. Walters's deposition testimony describing his lost time, economic harm, and emotional distress is sufficient evidence of those injuries to survive summary judgment. *See Losch*, 995 F.3d at 943 (plaintiff adequately established "concrete injury in the form of emotional distress and time . . . spent" through his own deposition testimony and affidavit).

Second, FTL relies on caselaw involving intangible, statutory injuries. These authorities establish the "now-familiar admonition" that a procedural statutory violation, standing alone, does not amount to a concrete injury in fact. *Muransky*, 979 F.3d at 924 (citation omitted). Instead, a statutory violation gives rise to an injury in fact only if the violation (1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff. *Id.* at 926–27.

These authorities do not support FTL's position. They share a dispositive feature that is missing here: they each involved a "bare

procedural violation" and no "concrete harm." *Spokeo*, 578 U.S. at 341. None involved a plaintiff who, like Walters, identified concrete harms in addition to a statutory violation. *See, e.g.*, *TransUnion*, 141 S. Ct. at 2210 (holding "[t]he mere presence of an inaccuracy in an internal credit file" in violation of federal statute inflicts "no concrete harm" unless it is "disclosed to a third party"); *Muransky*, 979 F.3d at 929 (holding unlawfully printing customers' credit card numbers on receipts was not "by itself . . . a concrete injury"). Walters's injuries go beyond FTL's noncompliant disclosures—he provided evidence of lost time, money, and peace. These are garden-variety injuries in fact under Article III.

Finally, FTL argues (and the district court reasoned) that Fast AC's intervening fraud is relevant to assessing whether Walters suffered an injury in fact. We disagree. In answering the question of standing, it is important to separate the element of injury in fact from the element of traceability. *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984) (stressing the "importan[ce]" of "keep[ing] the [standing] inquiries separate"), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). While the former asks whether there has been a concrete and particularized harm, the latter looks for "a causal connection between the injury . . . and the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (quotation omitted). Sometimes statutory-injury opinions use language that arguably blurs the distinction. *See, e.g.*, *Muransky*, 979 F.3d at 926, 932 (plaintiffs alleging a procedural statutory violation satisfy injury in fact by "show[ing] that

the statutory violation itself *caused a harm*," or that the violation "*caused . . .* a material risk of harm") (emphasis added); *TransUnion*, 141 S. Ct. at 2214 ("An 'asserted informational injury that *causes* no adverse effects cannot satisfy [the injury-in-fact requirement of] Article III.") (emphasis added) (quoting *Trichell*, 964 F.3d at 1004). But it would make little sense, and disrupt longstanding conceptions of Article III, to conclude that a plaintiff who suffers a *concrete harm* but not *because of* the defendant's statutory violation, has really suffered no concrete harm at all.

In any event, we will "heed our own warning to avoid 'overthinking' the [injury-in-fact] analysis." *Hunstein*, 48 F.4th at 1242 (quoting *Muransky*, 979 F.3d at 931). We conclude that when a plaintiff establishes that he personally suffered an actual, concrete harm, as Walters did here, the injury-in-fact analysis is complete. Questions about who or what caused the injury in fact are more appropriately addressed under the element of traceability.

## B.

Before assessing the complicated question of traceability, we will address the simple question of redressability. Redressability requires the plaintiff to show that his injuries are "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). Walters suffered an injury in fact in the form of wasted time, economic harm, and emotional distress. "That, it goes without saying, is an injury which the award of damages . . . will redress." *Del Valle v. Trivago GMBH*, 56 F.4th

1265, 1279 (11th Cir. 2022); *see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury.").

## C.

We end with traceability, which requires "a causal connection" between the plaintiff's injuries and the defendant's legal violation. *Lujan*, 504 U.S. at 560. Although this element presents the most difficult question in this appeal, it too is resolved in Walters's favor.

Crucial here is that Article III standing requires that the plaintiff's injuries be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). Because Walters's TILA claim against FTL provides the only basis for federal jurisdiction, he must establish that his wasted time, financial harm, and emotional distress are traceable to FTL's alleged TILA violation. It will not suffice to show that his injuries are traceable only to the independent actions of Fast AC. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

Walters offers two reasons why his injuries are traceable to FTL's TILA violation, which we address in turn. Because we accept one of them, we hold that Walters has standing to pursue his TILA claim against FTL.

1.

Walters's first traceability argument is that both Fast AC's concealment of FTL's loan documents *and* FTL's inadequate disclosures in those documents caused Walters's injuries. We disagree. We are not at the pleading stage; we are at summary judgment. And the summary judgment evidence establishes that FTL's allegedly inadequate disclosures in its standard loan documents could not have caused Walters to agree to the harmful loan because Fast AC's employee prevented Walters from ever viewing those documents.

To be sure, traceability is not an exacting standard. It is "less stringent" than the tort-law concept of "proximate cause," *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019), meaning the defendant's challenged conduct need not be "the very last step in the chain of causation" for it to be fairly traceable to the plaintiff's injury, *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019) (quotation omitted). "[E]ven harms that flow indirectly from the action in question can be . . . 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003).

But the requirement is not toothless. A plaintiff must at least demonstrate *factual* causation between his injuries and the defendant's misconduct. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Article III requires no more than *de facto* causality . . . .") (quotations omitted). Accordingly, we have held traceability

to be lacking if the plaintiff "would have been injured in precisely the same way" without the defendant's alleged misconduct. *See, e.g.*, *Cordoba*, 942 F.3d at 1272 ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who *never* said to Telecel they didn't want to be called again."); *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1289 (11th Cir. 2012) ("Swann's failure to provide the address of the jail on his [absentee-ballot] application independently caused his alleged injury[—i.e., not receiving a ballot]. Swann would not have received a ballot at the jail regardless of the application of the [challenged] statute by the officials."). Thus, under our precedents, a plaintiff lacks standing to sue over a defendant's action "if an independent source would have caused him to suffer the same injury." *Swann*, 668 F.3d at 1288.

Here, FTL's alleged omission of the correct TILA disclosures in its loan paperwork could not have been a "factual cause" of Walters's decision to take out the loan because Fast AC's employee prevented him from ever seeing that paperwork. There is no evidence that Walters relied on disclosures he never received. So he cannot seriously argue that his injuries would have been avoided if those concealed disclosures had included different information. To the extent Walters's harm was caused by "an independent source"—Fast AC's employee—there is no dispute that Walters would have suffered "precisely the same" harm if FTL had used different disclosures in its form paperwork. *Cordoba*, 942 F.3d at 1272; *Swann*, 688 F.3d at 1288–89.

Attempting to explain how documents he never read could have harmed him, Walters relies on the tort-law concept of multiple sufficient causes. This doctrine eases the factual causation requirement in the "rare" occurrence where several "causes independently, but concurrently, produce a result." *Burrage v. United States*, 571 U.S. 204, 214 (2014). In such a case, tort law treats each cause as a factual cause, even though the same injury would have occurred absent any one of them. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 27 (Am. L. Inst. 2010). Article III standing, too, "is not defeated merely because the complained of injury can fairly be traced to multiple parties." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (citation omitted).

But this is not a multiple-sufficient-cause case. To apply a multiple-sufficient-causation analysis, "there must have been multiple causes of the injury." *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1010 (9th Cir. 2008) (citation omitted); *see June v. Union Carbide Corp.*, 577 F.3d 1234, 1243 (10th Cir. 2009) ("The use of the word *sufficient* in both Restatements does not mean that either of them would impose liability for conduct that is not a but-for cause if only the conduct *could* have caused the injury."). Although Walters's complaint alleges multiple *potential* causes of his injuries, the evidence creates no dispute, sufficient to survive summary judgment, that FTL's disclosure forms are not one of them. The summary judgment evidence establishes that Walters accepted FTL's loan because Fast AC's employee hid the true price from

him. FTL's allegedly insufficient disclosure forms had nothing to do with it.

Indeed, Walters's own example of how his multiple-sufficient-causes test works shows why it fails under these facts. Walters posits: "If a person is exposed to multiple toxins, or the same toxin multiple times, each source that would be sufficient on its own to cause the plaintiff's injury constitutes a cause of the harm—even if the other sources, too, would have been sufficient without it." But Walters was never "exposed" to FTL's "toxin"—here, its allegedly inadequate disclosures. So he cannot trace his injuries to the text of those disclosures, even under his own conception of the doctrine.

2.

In the alternative, Walters advances another traceability theory, and this one sticks. TILA liability attaches not only to the provision of incorrect disclosures, but also to the failure to provide any disclosures at all. Walters's second theory of traceability is directed at the latter. According to Walters, even if Fast AC's misconduct (including its concealment of the loan documents) was the sole cause of Walters's injury, that injury is nonetheless traceable to FTL because Fast AC was acting as FTL's agent for the purpose of providing the disclosures. In other words, Fast AC's actions were not "independent" of FTL because it took those actions as an agent of FTL.

The district court declined to address this argument, concluding that Walters did not properly allege this agency theory in

his complaint. We disagree. The issue is one of pleading. Although we consider all the evidence in the record when addressing "a 'factual challenge' to standing" at the summary-judgment phase, when "making the necessary preliminary determination of *what claims the plaintiff has actually raised* (and therefore, what claims he must have standing to raise), we are bound by the contents of the plaintiff's pleadings, even on summary judgment." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005).

We believe Walters sufficiently pleaded that Fast AC was acting as FTL's agent when it allegedly signed up Walters for a loan without disclosing the loan's terms. Walters's complaint alleges that "FTL violated TILA because it never clearly and accurately disclosed: the finance charge; the amount of the total of payments; nor the due dates or payment schedule to" Walters. It alleges that Walters agreed to the loan because "Fast AC never gave him the statutorily required disclosures." And it asserts that "FTL contracted with Fast AC who at all times acted as its agent" and that "FTL is vicariously liable for the harms and losses" caused by Fast AC's misconduct by virtue of this agency relationship. These allegations are more than sufficient to raise a TILA claim based on an agency relationship. *Cf. Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259–61 (11th Cir. 2015) (holding federal pleading rules do not "require that a theory of vicarious liability be specifically pled in the complaint") (citation omitted).

There is no question that, if Fast AC was acting as FTL's agent in failing to provide the TILA-mandated disclosures, then

Walters's injuries are traceable to FTL. Accordingly, we conclude that Walters has standing to assert this agency-based TILA claim against FTL.

We express no opinion, however, on the merits of this claim. *See Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) ("[S]tanding is a threshold jurisdictional question which must be addressed . . . independent of the merits of a party's claims.") (cleaned up). We do not address whether or under what circumstances a creditor may be held liable under TILA for the actions of an agent. We also do not address whether there is sufficient evidence of an agency relationship between FTL and Fast AC. *See Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1265 (11th Cir. 2019) ("We are wary of diving head-first into claims that the district court hasn't yet considered . . . ."). All we hold here is that Article III allows Walters to litigate these questions in federal court.

## III.

Accordingly, we **REVERSE** the district court's entry of summary judgment for FTL and **REMAND** for additional proceedings consistent with this opinion.