[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10416

_____

ROBERT FRANKLYN LODGE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A043-215-757

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This petition for review challenges the constitutionality of a federal law about derivative citizenship. Robert Franklyn Lodge, a native and citizen of Jamaica, was born out of wedlock. Lodge's mother abandoned him, and his father moved to the United States and became a naturalized citizen. Lodge's father later brought him here as a lawful permanent resident. After Lodge was convicted of aggravated felonies, the Department of Homeland Security sought to remove him. Lodge argued that he had derived citizenship from his father under a since-repealed statute. The immigration judge ordered Lodge removed to Jamaica, and the Board of Immigration Appeals dismissed his appeal. Lodge argues that the former statute discriminated against unmarried fathers based on sex and against black children based on race. He maintains that he derived citizenship because the statute, cured of its constitutional defects, would have permitted his father to transmit citizenship to him. Because we conclude that Lodge lacks standing to raise these constitutional challenges, we dismiss his petition for review and deny as moot his motion to transfer.

## I. BACKGROUND

Born in 1979, Robert Franklyn Lodge is a native and citizen of Jamaica. His father, Robert Francis Lodge, was born in Jamaica and became a naturalized citizen of the United States in 1989. And Lodge's mother, Lorna Wyndham, has never been a citizen of the

United States. Lodge's parents never married. But their names appear on Lodge's "birth registration form" as his father and mother.

Lodge's mother abandoned him when he was a child. She left Jamaica to reside in London. Lodge's father became his sole "guardian" and "provide[d] everything" for him. He "maintained a continuing and close relationship" with Lodge, "support[ing] him fully and completely." Lodge's father brought Lodge to the United States, where he was admitted as a lawful permanent resident in 1992.

The Department of Homeland Security began removal proceedings against Lodge after he was convicted of aggravated felonies in 2016. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Lodge argued before the immigration judge that he was a citizen of the United States. The Department responded that Lodge was not a citizen.

The immigration judge found that Lodge was not a citizen of the United States. When Lodge's father naturalized and Lodge became a lawful permanent resident, the Immigration and Nationality Act provided several pathways to derivative citizenship for children born abroad to alien parents. *See* 8 U.S.C. § 1432(a) (1994), *repealed by* Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103, 114 Stat. 1631, 1632 (2000). Although Lodge would have derived citizenship under the Child Citizenship Act of 2000, which repealed and replaced those pathways, that new law is not retroactive, and Lodge did not satisfy its terms on its effective date. *See* 8 U.S.C. § 1431(a); *United States v. Arbelo*, 288 F.3d 1262, 1263 (11th Cir. 2002). The immigration judge explained that Lodge did not meet

the statutory conditions for naturalization under former section 1432(a). The immigration judge rejected Lodge's requests for withholding of removal and for relief under the Convention Against Torture and ordered him removed to Jamaica. Lodge appealed to the Board of Immigration Appeals, which dismissed his appeal.

Lodge petitioned this Court *pro se* for relief. He argued that the second clause of section 1432(a)(3)—which allowed naturalized unmarried mothers, but not naturalized unmarried fathers, to transmit citizenship to their children when other conditions were met—violated the equal protection guarantee of the Due Process Clause of the Fifth Amendment because it discriminated based on sex and race. We dismissed the appeal for want of prosecution but reinstated it after Lodge obtained counsel.

Lodge moved to transfer the proceeding to the Northern District of Georgia. *See* 8 U.S.C. § 1252(b)(5)(B). He argued that adjudication of his argument about race discrimination requires fact-intensive inquiry into the legislative purpose and the effect of the second clause of section 1432(a)(3) and that this Court may not decide issues of material fact about nationality. *See id.* We carried the motion with the case.

## II. STANDARD OF REVIEW

We review *de novo* our subject-matter jurisdiction. *Clement v. U.S. Att'y Gen.*, 75 F.4th 1193, 1198 (11th Cir. 2023).

## III. DISCUSSION

Lodge presents two constitutional challenges. First, he argues that the second clause of former section 1432(a)(3) excluded him from derivative citizenship based on an unconstitutional sex classification. Second, he argues that the same clause excluded him from derivative citizenship for a racially discriminatory purpose. We may address these challenges only if Lodge has standing.

Former section 1432(a) automatically conferred citizenship on a "child born outside of the United States of alien parents . . . upon fulfillment of" three conditions. 8 U.S.C. § 1432(a). The first condition, which appeared in the second clause of section 1432(a)(3), required "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id.* § 1432(a)(3). The second condition required that "[s]uch naturalization take[] place while such child is unmarried and under the age of eighteen years." *Id.* § 1432(a)(4). And the third condition required that "[s]uch child . . . begin[] to reside permanently in the United States while under the age of eighteen years." *Id.* § 1432(a)(5).

Lodge acknowledges that he did not derive citizenship under the statute. Although Lodge began to reside permanently in the United States before he turned 18 and was unmarried and under 18 when his father became a naturalized citizen, the second clause of section 1432(a)(3) provided derivative citizenship only if his *mother*, not his father, naturalized. His mother never did so.

Lodge challenges the constitutionality of the second clause. When the conditions in sections 1432(a)(3), 1432(a)(4), and 1432(a)(5) were satisfied, he argues, the second clause of section 1432(a)(3) "confer[red] automatic citizenship on the child of an unmarried mother, but not of a similarly situated unmarried father." Lodge argues that the sex classification in the second clause was the basis for denial of his defense of citizenship. He maintains that the clause unconstitutionally discriminated based on sex because it treated unmarried mothers and unmarried fathers unequally based solely on the "outmoded stereotype[]" that "an unwed father is more likely to be 'out of the picture' than an unwed mother." And he contends that the "disparate treatment of unmarried fathers" is unconstitutional too because the second clause was enacted with the purpose, and had the disparate effect, of limiting the number of black children who could derive citizenship.

For us to consider his constitutional challenges, Lodge must first establish that he has standing under Article III of the Constitution. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023). He must prove that he has suffered an injury-in-fact, fairly traceable to the challenged sex classification, that a favorable decision likely would redress. *See TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1262 (11th Cir. 2023). His injury must be "particularized" and "actual." *Walters*, 60 F.4th at 648 (citation and internal quotation marks omitted). And the sex classification must be the "likely cause[]" of his injury. *See id.* at 647 (citation and internal quotation marks omitted).

Lodge must establish his standing even though he is asserting his father's right to equal protection. "Because [the second clause of section 1432(a)(3)] treats sons and daughters alike, [Lodge] does not suffer discrimination on the basis of *his* [sex]." *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017). "He complains, instead, of [sex]-based discrimination against his father." *Id.* That is, Lodge argues that the sex classification in the second clause "clearly injure[s]" *"his father"* and that he has third-party standing "to assert his [father's] constitutional claims." A litigant ordinarily may not assert the rights of third parties. *See Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006). But a petitioner may have third-party standing to challenge a sex classification in a statute governing derivative citizenship to "vindicate his father's right to the equal protection of the laws." *Sessions*, 137 S. Ct. at 1689. Yet even a petitioner who invokes third-party standing must establish his own constitutional standing. *See Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1264 (11th Cir. 2023) ("[E]xceptions to the prohibition against asserting third-party rights . . . do not alter the requirements of standing under Article III." (citation omitted)). So although Lodge asserts his father's right to equal protection, he still must prove that the challenged sex classification was the "factual caus[e]" of an actual injury *to him* that a favorable decision likely would redress. *See Walters*, 60 F.4th at 650 (emphasis omitted).

Lodge suffered an actual injury. He is subject to removal because he was convicted of aggravated felonies. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The "risk of removal" is "sufficient to create an actual or imminent injury" under Article III. *Gonzalez v. United*

*States*, 981 F.3d 845, 852 (11th Cir. 2020). And citizenship is a defense to removal. *See* 8 U.S.C. § 1227(a) (only aliens may be removed). The injury that Lodge alleges—that is, the one that he asks us to remedy—is the immigration judge's order to remove him because he is not a citizen under section 1432(a).

Lodge argues that the sex classification in the second clause of former section 1432(a)(3) caused this injury. His theory of injury and traceability underpins his arguments about both sex and race discrimination. His theory of race discrimination is that the second clause "impermissibly benefits one class"—unmarried naturalized mothers—while "exclud[ing] another from the benefit"—unmarried naturalized fathers—based on a racially discriminatory purpose. And the "cure" for both "the sex- *and* race-based discrimination" is to "allow fathers to bestow derivative citizenship on their nonmarital children" under former section 1432(a)(3).

Lodge's theories fail because his injury is not "fairly traceable" to the sex classification in the second clause of former section 1432(a)(3). *See TocMail*, 67 F.4th at 1262 (citation and internal quotation marks omitted). Lodge would not have become a citizen under a sex-neutral version of the second clause of former section 1432(a)(3). The second clause provided a pathway to derivative citizenship for a child born abroad to alien parents upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. § 1432(a)(3). To be sure, because his mother never naturalized, Lodge did not derive citizenship under this statute. But he also

could not have derived citizenship under a sex-neutral version of the statute: a sex-neutral version of the second clause of section 1432(a)(3) would have conferred citizenship on children upon "the naturalization of one parent if the child was born out of wedlock *and the paternity or maternity of the other parent has not been established*." Or a sex-neutral version would have conferred citizenship upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation *or the naturalization of the father if the child was born out of wedlock and the maternity of the child has not been established*." Either way, because Lodge's maternity *has* been established, he would not have derived citizenship from his father even under a version of the second clause that treated mothers and fathers the same.

That Lodge's defense of citizenship was rejected has nothing to do with the sex classification. He did not "*suffer from* a [sex]-based distinction" in the second clause. *See Roy v. Barr*, 960 F.3d 1175, 1182 (9th Cir. 2020) (emphasis added). So he cannot establish traceability. *See Swann v. Sec'y*, 668 F.3d 1285, 1286 (11th Cir. 2012) (holding that an "alleged injury [i]s not fairly traceable" to a challenged provision if the claimant "would not have received" the benefit he sought "regardless" of whether his claim had merit).

Lodge insists that the sex classification caused his injury. He asks us to "hold that [he] derived citizenship through his father" under the pathway to derivative citizenship provided in section 1432(a)(4), section 1432(a)(5), and a sex-neutral version of the

second clause of section 1432(a)(3). He would have us remedy the alleged constitutional defects in the second clause by "allow[ing] the child of a similarly situated father . . . to obtain the same benefits" that the clause grants to children of naturalized, unmarried mothers. In Lodge's view, a father "similarly situated" to a naturalized mother whom the second clause benefits would be a father who "has legitimated the child and obtained exclusive legal custody" over him. Lodge proposes that we construe the second clause to confer automatic citizenship—assuming that the conditions in sections 1432(a)(4) and 1432(a)(5) are met—upon the "naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation *or the naturalization of the father if the child was born out of wedlock and the child is in the legal custody of the father.*"

Lodge's proposed amendment "does not simply correct a [sex] disparity—it rewrites the statute entirely." *See Roy*, 960 F.3d at 1182–83 (rejecting a similar proposed cure of the sex classification in the second clause of section 1432(a)(3)). By Lodge's logic, the second clause would have allowed naturalized mothers to transmit citizenship if the child were born out of wedlock *and the child were in the legal custody of the mother*. But the second clause instead allowed mothers to transmit citizenship "if the child is born out of wedlock *and the paternity of the child has not been established by legitimation.*" 8 U.S.C. § 1432(a)(3). These conditions are not the same. A child can be in his mother's legal custody even if his father has legitimated him. Whether a child is in his mother's custody says nothing about whether the child's paternity has been established.

Whether a child is in his *father's* custody says nothing about whether the child's *maternity* has been established. And that the child's maternity has been established does not tell us whether he is in his father's custody.

Lodge misses the point when he argues that a paternal "custodial relationship" is "on all fours with the maternal relationship described in" the second clause of section 1432(a)(3) because "the unwed mother is presumed to have sole legal custody" over the child. The second clause does not allow transmission of citizenship by the mother with sole legal custody if paternity has been established by legitimation. Likewise, that a father might have sole legal custody would be, on the plain terms of the sex-neutralized statute, only half the story; establishment of maternity would be the other half.

We agree with the government that it is "no coincidence" that Lodge's proposed amendment would, instead of removing the sex classification from the second clause, "effectively render retroactive the derivative citizenship provisions" of the Child Citizenship Act. Under that law, which became effective in 2001, a child born abroad derived citizenship when, before he turned 18, he "resid[ed] in the United States" as a lawful permanent resident "in the legal and physical custody of [his] citizen parent." 8 U.S.C. § 1431(a)(1)–(3); *Arbelo*, 288 F.3d at 1262. Lodge appears to have satisfied those conditions. But the Act is not retroactive. *Arbelo*, 288 F.3d at 1263. And the pathway to citizenship that depends on the second clause of former section 1432(a)(3) is not, as Lodge

contends, the new law plus a sex classification: the second clause of former section 1432(a)(3) makes no reference to custody.

Lodge retorts that legitimation is an "inherently sex-based" concept and that his standing cannot turn on whether he satisfies an "inherently [sexist] part of an unconstitutional test." We disagree. Although legitimation is often considered a mechanism for establishing paternity, not maternity, *see Schreiber v. Cuccinelli*, 981 F.3d 766, 774 (10th Cir. 2020); *Matter of Cross*, 26 I. & N. Dec. 485, 489 n.5, 492 (B.I.A. 2015), "both fathers and mothers can legitimate a child after the child's birth," *Roy*, 960 F.3d at 1183 (emphasis omitted). Yet most children are necessarily legitimated by their mothers by being born to them in a place where that fact is officially recorded. In any event, the removal of the sex classification from the second clause of section 1432(a)(3) would not need to involve the concept of establishment of maternity *by legitimation*.

Lodge is wrong that maternity need *never* be established. Indeed, the authorities that he cites undermine his argument. The Supreme Court has stated, for example, that "[t]he mother's status is documented *in most instances*"—not all—"by the birth certificate or hospital records and the witnesses who attest to her having given birth." *Nguyen v. INS*, 533 U.S. 53, 62 (2001) (emphasis added). Another decision states that "[e]stablishing maternity is *seldom*"—not never—"difficult." *Lalli v. Lalli*, 439 U.S. 259, 268 (1978) (emphasis added). And the Ninth Circuit has stated that *"in most cases"*—not all—"there is a reasonable expectation that the illegitimate child's maternal descent will be easier to trace than her paternal descent."

*Ablang v. Reno*, 52 F.3d 801, 805 (9th Cir. 1995) (emphasis added). These authorities do not speak in categorical terms. That a child's maternity has not been established is, even if improbable, "not impossible." *Roy*, 960 F.3d at 1182. "[A]n unmarried mother could give birth at her home and then leave the baby on the father's doorstep." *Id.* The father might confirm his own paternity with a test but not know the identity of the mother. *Id.* Lodge misses that the establishment of maternity, like the establishment of paternity by legitimation, is a legal proposition that attests a biological fact; it is not the biological fact itself. Were it otherwise, establishment of paternity would be no more meaningful a concept than establishment of maternity. In short, the law does not always know that a particular mother has given birth.

The sex classification in the second clause of former section 1432(a)(3) was not the "factual caus[e]" of Lodge's injury. *See Walters*, 60 F.4th at 650 (emphasis omitted). He lacks standing to challenge its constitutionality. So we may not address the merits of his arguments about race and sex discrimination or whether he has third-party standing to assert his father's right to equal protection. We also do not address Lodge's motion to transfer. *See* 8 U.S.C. § 1252(b)(5)(B). Nor do we decide whether Lodge qualified as a "child" under section 1432(a)(3). *See* 8 U.S.C. § 1101(c)(1) (1994) (defining "child" in section 1432(a)(3) to include a child born to unmarried parents only if he was legitimated under certain conditions).

## IV. CONCLUSION

We **DISMISS** Lodge's petition for review, and we **DENY** his motion to transfer as moot.